UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK


SEAN PATRICK LEONARD,

                              Plaintiff,

        v.

CAROLYN W. COLVIN, [1] Commissioner of
 Social Security,

                              Defendant.


**REPORT
and
RECOMMENDATION**

**12-CV-00526A(F)**


APPEARANCES:        LAW OFFICES OF KENNETH HILLER
                    Attorneys for Plaintiff
                    JAYA ANN SHURTLIFF, of Counsel
                    6000 North Bailey Avenue
                    Suite 1A
                    Amherst, New York 14226

                    WILLIAM J. HOCHUL, JR.
                    UNITED STATES ATTORNEY
                    Attorney for Defendant
                    KEVIN D. ROBINSON
                    Assistant United States Attorney, of Counsel
                    Federal Centre
                    138 Delaware Avenue
                    Buffalo, New York 14202, and

                    STEPHEN P. CONTE
                    Regional Chief Counsel - Region II
                    BENIL ABRAHAM
                    Assistant Regional Counsel
                    United States Social Security Administration
                    Office of the General Counsel, of Counsel
                    26 Federal Plaza
                    Room 3904
                    New York, New York 10278

---

[1]Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J. Arcara on

September 18, 2012. (Doc. No. 5).  The matter is presently before the court on motions

for judgment on the pleadings, filed on February 16, 2013, by Plaintiff (Doc. No. 7), and

on May 6, 2013, by Defendant (Doc. No. 11).

## BACKGROUND

Plaintiff Sean Patrick Leonard ("Plaintiff" or "Leonard"), seeks review of

Defendant's decision denying him Disability Insurance Benefits ("DIB") ("disability

benefits") under, Title II of the Social Security Act ("the Act"), and Supplemental Security

Income Benefits ("SSI") benefits under Title XVI of the Act.  In denying Plaintiff's

application for disability benefits, Defendant determined Plaintiff had the severe

impairments of history of lung blebs (fluid filled blister formations) with spontaneous

pneumothorax (abnormal presence of air around the lungs), emphysema, sternal

deformity, upper thoracic muscle pain, low back pain, chronic tobacco use, borderline

intelligence and depression, but does not have an impairment or combination of

impairments within the Act's definition of impairment  (R. 14-15).[2]  Defendant further

determined Plaintiff had the residual functional capacity to perform the full range of

sedentary work with the limitations of avoiding exposure to dust, fumes, gases, poor

ventilation, temperature extremes, wetness or humidity, and limited to simple tasks

involving simple instructions.  (R. 16).  As such, Plaintiff was found not disabled, as

---

[2] "R" references are to the page numbers of the Administrative Record submitted in this case for the Court's review.

defined in the Act, at any time from the alleged onset date through the date of the

Administrative Law Judge's decision on February 18, 2011.

## PROCEDURAL HISTORY

Plaintiff filed applications for disability benefits on March 10, 2009 (R. 113),

alleging disability based on a recurrent hole in his lung, poor ability to read and write,

and poor memory and concentration.  (R. 149).  The application was initially denied by

Defendant on August 18, 2009 (R. 54), and pursuant to Plaintiff's request filed

September 30, 2009 (R. 66), a hearing was held before Administrative Law Judge

William R. Pietz ("Pietz" or "the ALJ") on February 1, 2011, in Buffalo, New York.  (R.

29-52).  Plaintiff, represented by Amanda Jordan, Esq. ("Jordan"), appeared and

testified at the hearing.  (R. 4-17).  Vocational Expert Jay Steinbrenner ("the VE" or

"Steinbrenner") also appeared and testified at the hearing.  (R. 48-52).  The ALJ's

decision denying the claim was rendered on February 18, 2011.  (R. 9-28).

Plaintiff requested review by the Appeals Council, and the ALJ's decision

became Defendant's final decision when the Appeals Council denied Plaintiff's request

for review on April 11, 2012.  (R. 1-5). This action followed on June 6, 2012, with

Plaintiff essentially alleging the ALJ erred by failing to find him disabled.  (Doc. No. 1).

Defendant's answer, filed September 17, 2012 (Doc. No. 4), was accompanied

by the record of the administrative proceedings.  On February 16, 2013, Plaintiff filed a

motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a

memorandum of law (Doc. No. 7) ("Plaintiff's Memorandum").  Defendant filed, on May

6, 2013, Defendant's motion for judgment on the pleadings ("Defendant's motion"),

accompanied by a memorandum of law (Doc. No. 11) ("Defendant's Memorandum").

On July 12, 2013, Plaintiff filed Plaintiff's Reply/Response to Defendant's motion for judgment on the pleadings and Plaintiff's Reply Memorandum of Law (Doc. No. 12) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.  Based on the following, Plaintiff's motion should be DENIED.

## FACTS[2]

Plaintiff, Sean Leonard, ("Leonard" or "Plaintiff"), was born on December 3, 1983, attended special education classes at Kenmore-Tonawanda High School ("Ken-Ton") until grade 10 (R. 36), lives with his pre-school aged daughter (R. 36), and worked most recently as an usher from November 2008 until December 2008, and as a cook from August 2008 until December 2008, when Plaintiff left work as a result of a lung impairment.  (R. 37).  Plaintiff alleges he is not able to work because he has a learning disability, depression, anxiety, chest pain and shortness of breath.  (R. 42-43).

Prior to the alleged date of disability onset, on March 2, 1999, Plaintiff underwent psychological evaluation by the Ken-Ton school district for placement in special education classes (R. 133), where school psychologist Tara Petrozzi ("Petrozzi") evaluated Plaintiff using the Wechsler Intelligence Achievement Test ("WIAT"), and assessed Plaintiff with a score of 88 for verbal IQ, 78 for performance IQ, and a full scale IQ of 81.  (R. 142).  Plaintiff's reading subtest score measured 67, equivalent to a fourth grade reading level.  (R. 142).

On November 29, 2005, Victor S. Rogenbogen, M.D. ("Dr. Rogenbogen"), a radiologist, completed a chest X-ray on Plaintiff and diagnosed Plaintiff with a right-sided pneumothorax.  (R. 245).  Dr. Rogenbogen noted Plaintiff's chest X-ray revealed

---

[2] Taken from the record and the administrative hearing.

placement of a right-sided chest tube[3], and opined Plaintiff's pneumothorax was reduced in size.  (R. 245).  Plaintiff's chest tube was removed on December 5, 2005. (R. 249).

On February 5, 2009, James Panzarella, M.D. ("Dr. Panzarella"), completed a follow-up examination on Plaintiff who reported right chest pain after helping a friend to move, cold symptoms with pain while taking deep breaths, and coughing and sneezing. (R. 224).  Dr. Panzarella assessed Plaintiff with mildly decreased airflow, and referred Plaintiff for a chest X-ray.  *Id.* The same day, Bruce Buchner, M.D. ("Dr. Buchner"), a radiologist, reviewed an X-ray of Plaintiff's chest that revealed suspicion of early patchy infiltrate (something inside lungs)/atelectasis (partial collapse or increased volume) in Plaintiff's right middle lung lobe, mild pectus excavatum (hollowed chest), a "tiny" pneumothorax of less than 5%, and lucency (dark area) in Plaintiff's right medial lung apex which Dr. Buchner opined may be a post-operative change with emphysematous bulla (fluid-filled blister) formation.  (R. 231).

A computerized tomography ("CT") scan of Plaintiff's lungs on February 6, 2009, revealed 10-15% pneumothorax with emphysematous bulla formation at the apices (highest point of lungs), post-operative surgical staples in Plaintiff's upper right lung lobe, a small right pleural effusion (excess fluid around lungs) and pectus excavatum. (R. 229).

On February 9, 2009, Jeffrey R. Neu ("Dr. Neu"), a cardiologist, completed a physical examination on Plaintiff who reported shortness of breath while laying down.

_____

[3] The record is not clear when Plaintiff underwent surgery for chest tube implant as a result of a collapsed lung.

(R. 220).  Upon reviewing a computerized tomography ("CT") scan of Plaintiff's chest,
Dr. Neu diagnosed Plaintiff with right apical pneumothorax with no significant bleb (fluid-
filled blister) formation, and referred Plaintiff to a cardiothoracic surgeon for surgical
consultation.  (R. 221).

On February 10, 2009, Jan D. Aldridge, M.D. ("Dr. Aldridge"), a cardiothoracic
surgeon, completed a consultative surgical examination on Plaintiff and diagnosed
Plaintiff with pectus excavaturm, status post right thoracoscopy for pneumothorax with
small recurrence, and advanced bullous emphysema.  (R. 222).  Dr. Aldridge advised
Plaintiff to stop smoking, and referred Plaintiff for a chest X-ray.  *Id*.

On February 17, 2009, Dr. Panzarella completed a physical examination on
Plaintiff that showed mildly decreased airflow.  (R. 252).  Plaintiff reported improved
symptoms, but increased pain after taking care of his daughter while his girlfriend was
hospitalized, and that he had quit smoking by using the patch.  *Id*.

On March 4, 2009, Dr. Buchner reviewed an X-ray of Plaintiff's chest that
revealed pectus excavatum, but no obvious pneumothorax or pulmonary infiltrate.  (R.
254).

During a visit to Dr. Panzarella on March 20, 2009, Plaintiff reported a three-day
history of right shoulder pain with no shortness of breath.  (R. 255).  Upon examination,
Dr. Panzarella assessed Plaintiff with spontaneous pneumothorax, unspecified
backache, and tobacco use disorder, and referred Plaintiff for a chest CT scan.  *Id*.
Scott P. Cholewinski, M.D. ("Dr. Cholewinski"), a radiologist, evaluated a chest CT scan
of Plaintiff completed the same day that showed no pneumothorax, stable small
emphysematous bulla in both of Plaintiff's apices, stable post-operative changes,

atelectasis in Plaintiff's right upper lung lobe, and no pleural effusion or consolidation.
(R. 258).

On April 20, 2009, Plaintiff returned to Dr. Panzarella with complaints of right-sided back and chest pain after working at his construction job, and, upon examination, Dr. Panzarella assessed Plaintiff with good airflow, unspecified back and chest pain, and spontaneous pneumothorax.  (R. 260).

On June 5, 2009, Thomas Chou, M.D. ("Dr. Chou"), a psychologist, completed a consultative intelligence examination on Plaintiff on behalf of the Social Security Administration, and administered the Wide Range Achievement Test III ("WRAT-III") test on Plaintiff, who scored 68 on reading, 81 on verbal comprehension, 77 on perceptual reasoning, 97 on processing speed, 74 on working memory, and a full scale IQ of 78.  (R. 263-65).  Dr. Chou diagnosed Plaintiff with borderline intelligence and lung blebs, recommended Plaintiff for vocational training, and opined Plaintiff was able to follow and understand simple instructions and directions, perform simple tasks independently, maintain attention and concentration and a regular schedule, perform complex tasks with supervision, make appropriate decisions, relate adequately with others, and appropriately deal with stress, but would require assistance handling funds.  (R. 266).  Plaintiff reported activities of daily living that included performing household chores, playing cards, and taking care of his one year old daughter.  *Id.*

The same day, Nikita Dave, M.D. ("Dr. Dave"), completed an internal medical examination on Plaintiff, and assessed Plaintiff with significantly decreased AP diameter of the chest from severe pectus excavatum causing depression of Plaintiff's sternum one and one-half inches at the maximal point, and diagnosed Plaintiff with emphysema,

numerous right lung blebs with spontaneous pneumothorax, deviated nasal septum, upper thoracic pain, lower back pain, and chronic tobacco use.  (R. 271-72).  Dr. Dave assessed Plaintiff with moderate limitation for activities requiring prolonged exertion, mild to moderate limitation to repetitive forward bending and lifting and carrying moderately heavy objects as a result of thoracic pain, and referred Plaintiff for psychiatric evaluation.  (R. 272).

On August 13, 2009, Pratibha Bansal, M.D. ("Dr. Bansal") completed a consultative examination on Plaintiff, recommended Plaintiff for a surgical consultation for adverse pain, instructed Plaintiff on stretching exercise, and encouraged Plaintiff to stop smoking.  (R. 315).  A physical examination with Dr. Bansal on October 6, 2009 was normal.  (R. 310).

On August 18, 2009, M. Totin ("Psychologist Totin"), a psychologist with the Social Security Administration, completed a psychiatric review technique on Plaintiff, and assessed Plaintiff with mild restriction to activities of daily living and maintaining social functioning, moderate limitation to maintaining concentration, persistence or pace, and no repeated episodes of deterioration.  (R. 289).  A physical residual functional capacity assessment completed the same day showed Plaintiff with ability to occasionally lift and carry 20 pounds, frequently lift 10 pounds, stand or walk up to six hours in an eight hour workday, and unlimited capacity to pull and push.  (R. 294). Upon completion of a mental residual functional capacity assessment on Plaintiff, Psychologist Totin assessed Plaintiff with moderately limited ability to understanding and remembering detailed instructions, carrying out detailed instructions, travelling in unfamiliar places, and setting realistic goals or making plans independently from others.

8

(R. 299-300).  The same day, single decision maker ("SDM")[4] C. Kloepfer, completed a

residual functional capacity assessment on Plaintiff on behalf of the Social Security

Administration, and opined Plaintiff should avoid concentrated exposure to extreme

temperatures, wetness, humidity, fumes, and odors, but could tolerate unlimited

exposure to hazardous machinery, noise, and vibration in the workplace.  (R. 296).

On October 21, 2009, Sukhwinder Kodial, M.D. ("Dr. Kodial"), completed a

physical examination on Plaintiff, and assessed Plaintiff with clear lungs, anxiety and

depression.  (R. 331).  On March 11, 2010, Dr. Kodial noted Plaintiff reported anxiety,

fearful thoughts, depressed mood, diminished pleasure, fatigue, poor concentration,

indecisiveness, hallucinations, panic attacks with thoughts of death and suicide, and

sleep disturbances.  (R. 330).  Dr. Kodial opined Plaintiff exhibited symptoms of a major

depressive disorder and a smoking disorder, and referred Plaintiff to psychiatric

counseling.  (R. 331).

On April 15, 2010, Dr. Kodial completed a follow-up examination on Plaintiff after

Plaintiff received treatment at Kenmore Mercy Hospital emergency room for a fractured

nose suffered during an assault.  (R. 327).  Dr. Kodial noted Plaintiff was still

experiencing depression, and that Plaintiff reported Plaintiff's Cymbalta medication was

not working.  *Id.*  On May 10, 2010, Dr. Kodial assessed Plaintiff with depression and

anxiety, and noted Plaintiff reported attending Sheehan Hospital from May 3, 2010 until

May 7, 2010for detox counseling for addiction to pain medication.  (R. 324).

---

[4] The term "single decision maker" or "SDM" refers to a "non-physician, state-agency disability analyst" who "'may make the initial disability determination in most cases without requiring the signature of a medical consultant.'" *Roth v. Commissioner of Social Security*, 2012 WL 4480688, at *6 (N.D.N.Y. Sep't. 26, 2012) (quoting 71 Fed. Reg. 45890-01 (Aug. 10, 2006)).

## DISCUSSION

1.     **Disability Determination Under the Social Security Act**

An individual is entitled to disability insurance benefits under the Social Security

Act if the individual is unable

> to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can
> be expected to last for a continuous period of not less than
> 12 months. . ..  An individual shall be determined to be under
> a disability only if his physical or mental impairment or
> impairments are of such severity that he is not only unable to
> do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national
> economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves he or she is severely impaired and unable to perform

any past relevant work, the burden shifts to the Commissioner to prove there is

alternative employment in the national economy suitable to the claimant.  *Parker v.

Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

A.     **Standard and Scope of Judicial Review**

The standard of review for courts reviewing administrative findings regarding

disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law

judge's findings are supported by substantial evidence.  *Richardson v. Perales*, 402

U.S. 389, 401 (1971).  Substantial evidence requires enough evidence that a

reasonable person would "accept as adequate to support a conclusion." *Consolidated

Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938).

When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).  If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight.  *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence.  *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and 1383(c)(3).  "Congress has instructed . . . that the factual findings of the Secretary,[1] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  If the claimant is engaged in

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

such activity the inquiry ceases and the claimant is not eligible for disability benefits. *Id.*
The next step is to determine whether the applicant has a severe impairment which
significantly limits the physical or mental ability to do basic work activities as defined in
the applicable regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent
impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an
impairment and the impairment, or an equivalent, is listed in Appendix 1 of the
regulations and meets the duration requirement, the individual is deemed disabled,
regardless of the applicant's age, education or work experience, 20 C.F.R. §§
404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant
with such an impairment is unable to perform substantial gainful activity.[2] 42 U.S.C. §§
423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920. *See also*
*Cosme v. Bowen*, 1986 WL 12118, at * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646
F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in
Appendix 1, the Commissioner must then consider the applicant's "residual functional
capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If
the applicant can still perform work he or she has done in the past, the applicant will be
denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past
work, the Commissioner will consider the individual's "residual functional capacity," age,
education and past work experience in order to determine whether the applicant can
perform any alternative employment. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See also*

---

[2]     The applicant must meet the duration requirement which mandates that the impairment must last
or be expected to last for at least a twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

*Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work").  If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry,* 675 F2d at 467.  In reviewing the administrative finding, the court must follow the five-step analysis to determine if there was substantial evidence on which the Commissioner based the decision.  *Richardson*, 402 U.S. at 410.

**B.**     **Substantial Gainful Activity**

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" done for pay or profit.  20 C.F.R. § 404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed.  20 C.F.R. § 404.1572(a).  Earnings may also determine engagement in substantial gainful activity. 20 C.F.R. § 404.1574.  In the instant case, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since January 3, 2009, the date of Plaintiff's alleged onset date of disability (R. 14).  Plaintiff does not contest this determination.

**C.**     **Severe Physical or Mental Impairment**

The second step of the analysis requires a determination whether Plaintiff had a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509 and significantly limits the Plaintiff's ability to do

13

"basic work activities."  The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) ("§ 1521"), 416.921(b).

In this case, the ALJ determined that Plaintiff has the severe impairments of history of lung blebs with spontaneous pneumothorax, emphysema, sternal deformity, upper thoracic muscle pain, low back pain, chronic tobacco use, borderline intelligence, and depression as defined under 20 C.F.R. § 404.1520(c).  (R. 14-15).  Plaintiff does not contest the ALJ's finding.

## D.  Listing of Impairments, Appendix 1

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments").  If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough to prevent the claimant from performing any gainful activity and the claimant is considered disabled.  20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d. 45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed impairments, the claimant is considered disabled").  The relevant listing of impairments in this case includes 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 1.04 ("§1.04")

(Disorders of the spine), § 3.02 ("§ 3.02") (Chronic pulmonary insufficiency), and § 12.04 ("§ 12.04") (Affective Disorders).

## Disorders of the spine § 1.04

In this case, the ALJ determined that Plaintiff's lumbar disc impairment does not meet or equal the criteria required for disability under § 1.04 (R. 15), because Plaintiff's nerve root compression has not resulted in a positive straight leg raising test results as required under § 1.04A, spinal arachnoiditis as required under § 1.04B, or spinal stenosis as required under § 1.04C.  (R. 15).  Plaintiff does not contest this determination, and substantial evidence supports the ALJ's determination.  In particular, on June 5, 2009, Dr. Dave opined Plaintiff has mild to moderate limitation to repetitively bend, lift, and carry heavy objects.  (R. 272).  As no other evidence in the record supports Plaintiff's lumbar disease meets the criteria under § 1.04, Plaintiff is not disabled as a result of Plaintiff's lumbar disc disease.

## Chronic pulmonary insufficiency § 3.02

Disability resulting from chronic pulmonary insufficiency under § 3.02 requires

A. Chronic obstructive pulmonary disease, due to any cause, with the $FEV_1$[5] equal to or less than the values specified in table I corresponding to the person's height without shoes. (In cases of marked spinal deformity, see 3.00E.);

| Table I | | |
|---|---|---|
| Height without shoes (centimeters) | Height without shoes (inches) | $FEV_1$ equal to or less than (L, BTPS) |
| 154 or less | 60 or less | 1.05 |
| 155-160 | 61-63 | 1.15 |
| 161-165 | 64-65 | 1.25 |
| 166-170 | 66-67 | 1.35 |
| 171-175 | 68-69 | 1.45 |
| 176-180 | 70-71 | 1.55 |

[5] $FEV_1$ is a measurement of forced volume vital capacity exhaled by a person at the end of the first second of forced expiration.

| 181 or more | 72 or more | 1.65 |

Or

B. Chronic restrictive ventilatory disease, due to any cause, with the FVC equal to or less than the values specified in Table II corresponding to the person's height without shoes. (In cases of marked spinal deformity, see 3.00E.);

| Table II | | |
|---|---|---|
| Height without shoes (centimeters) | Height without shoes (inches) | FVC equal to or less than (L, BTPS) |
| 154 or less | 60 or less | 1.25 |
| 155-160 | 61-63 | 1.35 |
| 161-165 | 64-65 | 1.45 |
| 166-170 | 66-67 | 1 |

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.02.

In the instant case, the ALJ determined Plaintiff's respiratory disease does not meet the criteria under § 3.02 of the Act (R. 15), Plaintiff does not contest the ALJ's determination, and substantial evidence in the record establishes that Plaintiff's $FEV_1$ does not meet the criteria required for disability listed under § 3.02A Table I, or that Plaintiff's breathing impairment meets the criteria for disability under § 3.02B. Specifically, the record establishes that on June 5, 2009, Plaintiff, who weighed 115 pounds and was 68 inches tall, measured 5.07 $FEV_1$ on a pulmonary function test. (R. 273). Thus, in the absence of any evidence in the record to indicate that Plaintiff's respiratory impairment meets the criteria under § 3.02A or § 3.02B, substantial evidence supports the ALJ's determination Plaintiff is not disabled as a result of Plaintiff's pulmonary impairment.

**Affective Disorders § 12.04**

In this case, the ALJ that determined Plaintiff does not meet the criteria for disability under § 12.04, as substantial evidence supports Plaintiff's mental impairment

does not result in marked restriction of Plaintiff's activities of daily living, marked difficulties in social functioning, maintaining concentration, persistence or pace, or repeated episodes of decompensation of extended duration.  (R. 15).  Plaintiff does not contest this determination, and substantial evidence supports the ALJ determination.

In particular, on June 5, 2009, Dr. Chou opined Plaintiff was able to maintain concentration and attention, perform complex tasks with supervision, and that Plaintiff reported activities of daily living that include performing household chores, and taking care of Plaintiff's one year old daughter.  (R. 265-66).  On August 18, 2009, Psychologist Totin assessed Plaintiff with only mild restriction to activities of daily living and maintaining social functioning, moderate limitation to maintaining concentration persistence or pace, and no repeated episodes of deterioration.  (R. 289).  As such, substantial evidence supports the ALJ's determination that Plaintiff's mental impairment does not meet the criteria under § 12.04, and Plaintiff is not disabled as a result of Plaintiff's depressive disorder.

**Credibility of Plaintiff's Subjective Complaints**

In the instant case, the ALJ, as required, evaluated Plaintiff's impairments under 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526, and determined that although the record establishes Plaintiff has the severe impairments of history of lung blebs with spontaneous pneumothorax, emphysema, sternal deformity, upper thoracic muscle pain, low back pain, chronic tobacco use, and borderline intelligence and depression, Plaintiff's statements concerning the intensity, persistence and limiting effects of Plaintiff's symptoms were not credible to the extent inconsistent with the ALJ's residual functional capacity assessment of Plaintiff.  (R. 17).  Plaintiff contests the ALJ's

credibility determination, specifically, that the ALJ's residual capacity assessment of Plaintiff did not consider factors required under 20 C.F.R. §§ 404.1529, 416.929(c) including Plaintiff's daily activities, location, duration, frequency and intensity of Plaintiff's symptoms, precipitating and aggravating factors, type, dosage, effectiveness and side effects of medications, and measures taken by the Plaintiff to relieve Plaintiff's symptoms.  Plaintiff's Memorandum at 16-18.  Plaintiff further asserts that the ALJ improperly relied on Plaintiff's testimony surrounding Plaintiff's petit larceny conviction, Plaintiff's testimony of Plaintiff's alcohol use, and Plaintiff's ability to read.  Plaintiff's Reply at 4-5.  Defendant contends the ALJ's credibility determination properly relied on medical evidence in the record that serves to undermine Plaintiff's testimony as to the severity of Plaintiff's lung disorder and Plaintiff's ability to perform activities of daily living.  Defendant's Memorandum at 27-29.

Pain or other symptoms may be important factors contributing to a disability claimant's functional loss and may affect a claimant's ability to perform basic work activities if relevant medical signs or laboratory findings show the existence of a medically determinable impairment that could "reasonably" be expected to cause the associated pain or other symptoms.  20 C.F.R. § 404.1529(c)(3).  "A claimant's testimony is entitled to considerable weight when it is consistent with and supported by objective medical evidence demonstrating that the claimant has a medical impairment which one could reasonably anticipate would produce such symptoms" *Hall v. Astrue*, 677 F.Supp.2d 617, 630 (W.D.N.Y. 2009) (citing *Latham v. Commissioner of Social Security*, 2009 WL 1605414, at *15 (N.D.N.Y. 2009)).

In this case, Plaintiff's allegation that Plaintiff is not able to work because of Plaintiff's poor breathing, chest pain with shortness of breath, depression, anxiety and learning disabilities (R. 33), does not comport with Plaintiff's testimony he cares for his young daughter (R. 45), prepares meals (R. 69), performs household chores and goes shopping (R. 45), helps friends move (R. 224), and goes fishing.  (R. 170).

It is the function of the ALJ, not the court, to assess the credibility of witnesses, *Tankisi v. Commissioner of Social Security*, 521 Fed. Appx. 29, 35 (2d Cir. 2013), and here, the ALJ's credibility determination is supported by substantial evidence in the record.  As such, Plaintiff's motion on this issue should be DENIED.

### F. <u>Suitable Alternative Employment in the National Economy</u>

Once an ALJ finds a claimant's impairments prevent a return to previous work, the burden shifts to the Commissioner to prove substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training.  *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980). It is improper to determine a claimant's residual work capacity based solely upon an evaluation of the severity of the claimant's individual complaints.  *DeLeon v. Secretary of Health and Human Services*, 734 F.2d 930, 937 (2d Cir. 1984).  To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they nevertheless permit certain basic work activities essential for other employment opportunities.  *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981).  Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities."  *Id.*  An individual's exertional capability refers to the

performance of "sedentary," "light," "medium," "heavy," and "very heavy" work.[1]

*Decker*, 647 F.2d at 294.  In addition, the Commissioner must establish that the

claimant's skills are transferrable to the new employment, if the claimant was employed

in a "semi-skilled" or "skilled" job.[2] *Id.* at 294.  This element is particularly important in

determining the second prong of the test, whether suitable employment exists in the

national economy.  *Id.* at 296.  Where applicable, the Medical Vocational Guidelines of

Appendix 2 of Subpart P of the Regulations ("the Grids") may be used to meet the

Secretary's burden of proof concerning the availability of alternative employment and

supersede the requirement of vocational expert testimony regarding specific jobs a

claimant may be able to perform in the regional or national economy.  *Heckler v.*

*Campbell*, 461 U.S. 458, 462 (1983).

     In this case, the ALJ determined that Plaintiff retained the residual functional

capacity to perform work at the sedentary level with the limitations of avoiding exposure

---

[1]  "Sedentary work" is defined as: "lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools....Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

[2]  The regulations define three categories of work experience: "unskilled", "semi-skilled", and "skilled".  *Decker, supra*, at 295.
    "Un-skilled" is defined as: "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength....primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in thirty days, and little specific vocational preparation and judgment are needed.  A person does not gain work skills by doing unskilled jobs."
20 C.F.R. § 404.1568(a).
    "Semi-skilled work" is defined as: "work which needs some skilled but does not require doing the more complex work duties.  Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work.  A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."
20 C.F.R. § 404.1568(b).

to dust, fumes, gases, poor ventilation, temperature extremes, wetness and humidity, and limited to performing simple tasks involving simple instructions.  (R. 16).

Plaintiff contends the ALJ violated the treating physician's rule at this step of the disability analysis because the ALJ's residual functional capacity assessment did not include a function-by-function assessment of Plaintiff's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop or crouch.  Plaintiff's Memorandum at 13. Specifically, Plaintiff maintains the ALJ was required to re-contact Plaintiff's treating physicians, Drs. Neu, Panzarella, Bansal and Kodial, to secure treating physician opinions on Plaintiff's functional limitations, Plaintiff's Memorandum at 10, and include Plaintiff's mental limitations within the ALJ's residual functional capacity assessment of Plaintiff.  Plaintiff's Memorandum at 15.  Defendant maintains that the ALJ's residual capacity assessment of Plaintiff was based on the entirety of the record, and, as no gaps in the record exist, the ALJ was not required to re-contact Plaintiff's treating physicians.  Defendant's Memorandum at 23.

Plaintiff correctly asserts, Plaintiff's Memorandum at 13, it is the responsibility of the ALJ to support the residual functional capacity assessment of a claimant with a treating physician's function-by-function analysis.  *Hurd v. Astrue,* 2013 WL 321573, at *3 (W.D.N.Y. Jan. 28, 2013) (remand where ALJ did not complete function by function analysis).  Although the treating physician's rule requires the ALJ give treating physician opinions "controlling weight" where the opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in [the] case record," 20 C.F.R. § 404.1527(d)(4), in instances such as here, where the claimant's treating physicians do not provide specific

function-by-function assessments of the claimant's residual functional capacity, but the medical record is extensive enough to support an informed residual functional capacity finding by the ALJ, remand is not appropriate. *Tankisi v. Commissioner of Social Security*, 521 F. App'x. 29, 34 (2d Cir. 2013) (citing *Lowry v. Astrue*, 474 F. App'x 801, 804 (2d Cir. 2012); *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999)).  Significantly, Plaintiff testified that he was able to lift up to 20 pounds, frequently lift or carry objects weighing up to 10 pounds, and stand or walk much of the workday  (R. 37), and that he was not taking medication or receiving counseling for depression.  (R. 47-48), and no other evidence in the record serves to contradict Plaintiff's testimony, or the ALJ's determination that Plaintiff is able to perform work at the sedentary level.  (R. 22). Moreover, the ALJ specified that he had "considered all symptoms and the extent to which the[] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929 and SSRs 96-4p and 96-7p [as well as] opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p,"  (R. 16).  As such, the ALJ's residual functional capacity assessment of Plaintiff is supported by substantial evidence, and Plaintiff's motion on this issue should be DENIED.

Plaintiff's further contention that the ALJ improperly assigned weight to Dr. Dave's opinion of June 5, 2009, to the exclusion of more recent opinions proffered by Plaintiff's treating physicians, Plaintiff's Memorandum at 3, is also without merit.

In instances where a lengthy period of time exists between physician opinions and a claimant's condition deteriorates over such time, ALJ's are required to explain any

decisions that rely on the earlier opinion(s).  *Balodis v. Leavitt*, 704 F. Supp.2d 255, 266

(E.D.N.Y. 2010) (ALJ must explain reliance on earlier opinion where deterioration of

claimant's condition is possible).  In this case, however, no inordinate length of time

exists between the date of Dr. Dave's opinion on June 5, 2009, and Plaintiff's

subsequent examination by Plaintiff's treating physicians.  Specifically, subsequent to

undergoing examination by Dr. Dave on June 5, 2009, Plaintiff underwent an

intelligence evaluation by Dr. Chou on June 5, 2009 (R. 265), a psychiatric review

technique by Dr. Totin on August 18, 2009 (R. 289), a consultative physical examination

from Dr. Bansal on August 13, 2009 (R. 315), and physical examinations by Dr. Kodial

on October 21, 2009, March 11, 2010, April 15, 2010 and May 10, 2010 (R. 331, 330,

327, 324).  Moreover, none of Plaintiff's treating physicians opined that Plaintiff's

condition had deteriorated between June 5, 2009, and the date of the administrative

hearing on February 1, 2011, and Plaintiff's examinations during such time were normal.

As such, Plaintiff's motion on this issue should be DENIED.

**Vocational expert testimony**

In instances where nonexertional limitations diminish a claimant's ability to

perform the full range of "light" work, the ALJ should require the Secretary to solicit

testimony from a vocational expert regarding the availability of jobs in the national and

regional economies suitable for employment of an individual with exertional and

nonexertional limitations similar in nature to the claimant's.  *Bapp v. Bowen*, 802 F.2d

606, 501 (2d Cir. 1986).  Following a vocational expert's testimony, a plaintiff must be

afforded an opportunity to rebut the expert's evidence, *Nelson v. Bowen*, 882 F.2d 45,

49 (2d Cir. 1989), and "[i]f a claimant has nonexertional limitations that 'significantly limit

the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert." *Lawler v. Astrue*, 2013 WL 656740, at *3 (2d Cir. February 25, 2013) (citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting, *Bapp*, 802 F.2d at 605)).

In the instant case, Plaintiff contends that the ALJ did not include all of Plaintiff's limitations in the hypothetical posed to the VE, and, as a result, the VE's testimony was not based on substantial evidence in the record.  Plaintiff's Memorandum at 19.  In particular, Plaintiff contends the VE's determination that Plaintiff is capable of work as a telephone survey worker and telephone marketer fail to consider evidence of Plaintiff's reading deficit.  Plaintiff's Memorandum at 20.  This is contrary to evidence in the record.

In this case, the ALJ posed a hypothetical situation to the VE that included limitations particular to Plaintiff, including avoiding concentrated exposure to temperature extremes and dust, fuels and gases, simple instructions, with a 10th grade IEP diploma (R. 49), to which the VE opined that Plaintiff, with the limitations posed by the ALJ to the VE, would be capable of performing the positions of telephone survey worker (unskilled, sedentary) with 32,630 positions in the national economy, and 364 positions in the  Western New York regional economy (R. 50), and telephone solicitation or marketing (unskilled, sedentary) with 343,275 positions in the national economy and 1,106 positions in the Western New York region.  (R. 51).  The ALJ then altered the hypothetical to include absence from work two days each month, which the VE opined would result in a violation of attendance requirements and eventual dismissal.  (R. 51). Moreover, as the record contains no medical evidence to support Plaintiff's testimony he

24

is able to work only half of a regular work week as a result of pain, the ALJ's

hypothetical to the VE that poses missed work more than two days each month is

irrelevant, and the VE's opinion that such absences would result in dismissal from work

can be ignored.   *Qui Li Mei v.* Astrue, 2013 WL 3708886, at \*7 (E.D.N.Y. July 12, 2013).

As such, the ALJ properly submitted all of Plaintiff's limitations to the VE, the VE relied

on such limitations, and Plaintiff's motion on this issue should therefore be DENIED.

## **CONCLUSION**

Based on the foregoing, Defendant's motion should be GRANTED, Plaintiff's

motion should be DENIED, and the Clerk of the Court should be instructed to close the

file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March 7, 2014
                    Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

      **ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

      **ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

      <u>**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**</u>

*Thomas v. Arn ,*  474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services ,*  892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited ,*  838 F.2d 55 (2d Cir. 1988).

      Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

                                        /s/ *Leslie G. Foschio*

                                  _____

                                      LESLIE G. FOSCHIO
                            UNITED STATES MAGISTRATE JUDGE

DATED:       March 7, 2014
                Buffalo, New York